

FILED IN CHAMBERS
U.S.D.C. Atlanta
NOV 14 2019
JAMES N. HATTEN, Clerk
By: Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

*v.*

JHOVANY ARIAS HERRERA

**CRIMINAL COMPLAINT**

Case Number: 1:19-MJ-981

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 13, 2019, in Fulton County, in the Northern District of Georgia, the defendant, JHOVANY ARIAS HERRERA, knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with at least one of the following Homeland Security Investigation, Enforcement and Removal, officers, that is, Officers M.C., A.M., O. Q, and G.R., while the officers engaged in and on account of the performance of their official duties, and in doing so, did inflict bodily injury upon Officers O.Q. and G.R.,

in violation of Title 18, United States Code, Sections 111(a)(1) and (b).

I further state that I am a(n) Special Agent with Homeland Security Investigations, Immigration and Customs Enforcement, and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof. Yes

Signature of Complainant
Antonio P. Edwards

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it. Sworn to before me, and subscribed in my presence

November 14, 2019 at Atlanta, Georgia
Date City and State

JANET F. KING
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Richard S. Moultrie, Jr.

Signature of Judicial Officer

**Affidavit**
**Criminal Complaint No. 1:19-MJ-981**

I, Antonio P. Edwards, a Special Agent (SA) with Homeland Security Investigations (HSI), Immigration and Customs Enforcement (ICE), being first duly sworn, hereby depose and state as follows:

**Agent Background and Introduction**

1. I am currently assigned to the Border Enforcement Security Task Force at Hartsfield-Jackson Atlanta International Airport (Port of Entry 1704). Among my responsibilities, I am empowered by law to investigate and to make arrests for offenses involving assaults on federal employees and officers performing official duties at the airport.

2. Prior to working for HSI, from March 2008 to March 2012, I served as Special Agent for the United States Army Criminal Investigation Command, Computer Crime Investigative Unit (CCIU), in Fort Belvoir, Virginia. While employed at CCIU, I was responsible for the investigation of violations pertaining to computer intrusions and to other types of malicious computer activity directed against the United States Army.

3. From November 2007 to November 2008, I served as Special Agent with the Department of Commerce, Bureau of Industry and Security (BIS), Office of Export Enforcement. At BIS, I was responsible for enforcing federal laws relating to the unlawful export of goods and technology from the United States.

4. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program. I also received a Juris Doctorate from Indiana University in May 2003, and I was subsequently admitted to the State Bar of Indiana where, from August 2003 to October 2006, I was employed as a

Deputy Prosecutor for Morgan County. Additionally, I served as a Judge Advocate General in the United States Army National Guard, District of Columbia, for approximately 11 years.

5. This affidavit is intended to show sufficient probable cause for the arrest of Jhovany ARIAS HERRERA (HERRERA) for the offense of assault of federal officers, including the infliction of bodily injury, in violation of Title 18, United States Code, Sections 111(a)(1) and (b), and does not set forth all of my knowledge about this matter. The information contained in this affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and the review of documents and records.

**Probable Cause in Support of Arrest**

6. On November 13, 2019, while working at Hartsfield-Jackson Atlanta International Airport (Hartsfield-Jackson), I was contacted by Customs and Border Protection Officer (CBPO) Shannon Hammock to respond to an assault of federal officers. Upon my arrival, I spoke with Enforcement and Removal Operations (ERO) Officers Maria Chairez, Aidee Morales, Orion Qzuna, and Gonzalo I. Ramirez, who described the incident to me as outlined below.

7. On November 13, 2019, HERRERA assaulted and resisted federal officers who were deporting HERRERA from the United States and returning him to Lima Peru, his home country of origin. At the time, Deportation Officers Chairez, Morales, Qzuna, and Ramirez were transporting HERRERA on Delta Airline flights from San Diego, CA, through Atlanta, GA, *en route* to Peru.

HERRERA is a Spanish speaker and Ramirez, Morales, and Chairez are fluent Spanish speakers who communicated with HERRERA in Spanish. Although HERRERA was under arrest and in custody to be administratively removed from the United States, he was not restrained or cuffed initially due to Delta Airlines and ICE protocol.

8. After arriving at Hartsfield-Jackson from San Diego, the deportation officers escorted HERRERA to the boarding area for the Atlanta flight to Peru. After boarding the flight, but before engaging his seatbelt, HERRERA suddenly began screaming and demanding to use the bathroom. At the time, airline officials had already ordered passengers to fasten their seatbelts and closed and secured the door of the airplane. Officer Chairez explained to HERRERA that he would be permitted to use the bathroom momentarily once the airplane departed, the seatbelt light went off, and the airplane captain permitted passengers to leave their seats.

9. Prior to the flight's departure, HERRERA began to lean toward the seats in front of him and to breathe heavily, causing passengers to turn around in alarm. He then asked Officer Chairez for his passport. Officer Chairez told HERRERA that his passport would accompany him to Peru, and that HERRERA would receive his passport at the necessary time for Peruvian immigration procedures. HERRERA again started yelling.

10. All the deportation officers present attempted to calm HERRERA by allowing access to the bathroom. As Officer Ramirez escorted HERRERA to the bathroom he (HERRERA) punched the airplane wall frightening nearby passengers. Flight attendants responded and tried to calm the passengers as

HERRERA entered the bathroom. While HERRERA was in the bathroom, Officer Chairez arranged with a flight attendant for HERRERA's seating assignment to be changed so that he would be seated with another deportee and other deportation officers.

11. HERRERA began yelling again after he left the bathroom and discovered his seat reassignment. Officer Chairez repeatedly asked HERRERA to calm down and explained that he would be removed from the flight if he refused to do so. The flight captain then left the cockpit, approached Officer Chairez and the other deportation officers, and requested that the officers make a decision about whether HERRERA could be calmed because, if not, the captain intended to remove him from the airplane and have him arrested. The deportation officers tried but could not stop HERRERA from screaming.

12. Officers Chairez and Ramirez then decided to remove HERRERA from the airplane. At the time, HERRERA was seated in a middle seat, still screaming, and with clenched fists. As Officers Chairez and Ramirez tried to remove him, HERRERA tore off his sweater and threw it at passengers seated in front of him. Officers Ramirez and Qzuna immediately grabbed HERRERA's arms and attempted to escort him off the airplane. HERRERA pulled away from the officers, began punching toward the officers' face and chest areas, and tried to kick the officers' legs and lower body. Officer Chairez repeatedly told HERRERA to stop resisting. HERRERA ignored Officer Chairez's instructions and continued to fight with all the officers.

13. HERRERA continued to strike at the officers with his hands and feet, causing the officers to struggle with HERRERA in the aisle of the airplane. As he

struggled, HERRERA kicked Officer Ramirez, striking Officer Ramirez in the knee, causing bruising to Officer Ramirez (see Exhibit "A," attached hereto). HERRERA repeatedly struck Officer Qzuna, hitting the officer's groin area, forearm, hands, and elbow (see Exhibits "B," "C," and "D," attached hereto). HERRERA also tried to head butt Officers Ramirez and Qzuna. Eventually, HERRERA forced his way past the deportation officers and moved toward the galley area at the rear of the airplane.

14. Officers Chairez, Morales, Qzuna, and Ramirez pursued HERRERA to the rear of the airplane where Officers Qzuna and Ramirez succeeded in restraining him in the galley area. The deportation officers then removed him from the flight where Atlanta Police Department officers assisted in transporting HERRERA to a secure CBP cell. HERRERA was then transported to an ERO facility.

## Conclusion

15. Based on my training and experience, and the facts set forth in this affidavit, I submit that probable cause now exists that HERRERA has violated Title 18, United States Code, Section 111. Sections 111(a)(1) and (b) make it a federal crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer who is engaged in, or on account of the performance of the federal officer's, official duties and, in so doing, to "inflict bodily injury." 18 U.S.C. §§ 111(a)(1) & (b). Title 18, United States Code, Section 1114, defines a federal officer as "any officer or employee of the United States or of any agency

in any branch of the United States Government, while such officer or employee is engaged in or on account of the performance of official duties."



Herrera Complaint Affidavit
1:19-MJ-981
Exhibit A (Officer Ramirez Injury)

Herrera Complaint Affidavit
1:19-MJ-981
Exhibit B (Officer Qzuna Injury)

Herrera Complaint Affidavit
1:19-MJ-981
Exhibit C (Officer Qzuna Injury)

Herrera Complaint Affidavit
1:19-MJ-981
Exhibit D (Officer Qzuna Injury)